ESTATE OF HIPPE: KIEFER, Respondent, vs. GALLET, Administratrix, Appellant.

*December 3, 1929—January 7, 1930.*

For the appellant there was a brief by *L. P. Fox,* attorney for the estate, and *George M. Goggins,* guardian *ad litem,* both of Chilton, and oral argument by *Mr. Fox.*

For the respondent there was a brief by *C. E. Lovett* of Park Falls, and oral argument by *W. K. Parkinson* of Phillips.

OWEN, J.   During his lifetime Robert H. Hippe was the proprietor of a garage in the city of Chilton.   He died on the 11th day of October, 1924.   Helen Gallet was appointed administratrix of his estate.   The time for filing claims against the estate was limited to the 17th day of February, 1925.   On the 17th day of August, 1925, Adolph Kiefer filed a claim against the estate, aggregating $15,000, the nature of which will appear as we proceed.

It appears that the claimant entered the employ of the deceased as a mechanic in his garage some time during the year 1913, remained in such employ until the death of his employer, and thereafter he continued in the employ of the estate.   He received an hourly wage, at first twenty-seven

and one-half cents an hour, which was increased from time to time until, at the death of Hippe, he was being compensated at the rate of fifty-five cents per hour, and after the death of Hippe the administratrix of the estate increased his pay to sixty cents per hour. This hourly wage was paid to him regularly at stated periods. The claim which he filed against the estate is for additional compensation, and is based on the following alleged agreement: it appears that in January, 1920, Hippe was in the Sacred Heart Sanitarium in Milwaukee. During this month the claimant went to Milwaukee to see Hippe and to attend the automobile show. His nephew, Howard Kinsey, accompanied him on the trip. They called on Hippe and there was some conversation with reference to the manner in which matters were going at the garage. Kiefer said that things were going pretty good except that Clocksin, another employee, was talking about quitting, that his wages were not high enough. Hippe then said, Well, let Clocksin quit, but don't you quit; and he asked claimant if he was satisfied with what he was getting. Claimant said, No; he thought he should get more wages. Hippe then told him that if he would stay for the present he would take up the matter of his proper wages with him when he got out of the sanitarium.

There is evidence to show that some time during the latter part of June or the 1st of July, 1920, Mr. Hippe had another conversation with the claimant in which he told claimant that he had thought the matter over and concluded that he, claimant, was not getting what he should get or what he was entitled to, but that at that time he was in debt and could not afford to pay more, and that if claimant would stay with him for a period of five years he would, at the expiration of the five-year period, pay him an amount which would represent the difference between that which he paid him and what he could earn in Milwaukee or some other

similar city, to which the claimant agreed. The five-year period expired about the 1st day of July, 1925, and shortly thereafter the claimant filed this claim with the estate. Judgment was rendered in favor of the claimant for $5,772.75.

The contract was oral and was not to be performed on either side within five years. It plainly falls within the condemnation of sec. 241.02, Stats., which declares every agreement that by its terms is not to be performed within one year from the making thereof, void, unless some note or memorandum thereof expressing the consideration be in writing and subscribed by the parties to be charged therewith. *Washburn v. Dosch,* 68 Wis. 436, 32 N. W. 551; *McClellan v. Sanford,* 26 Wis. 595, 609. Neither does the fact that the contract was partially or fully performed by one party take it out of the statute. *Cohen v. Stein,* 61 Wis. 508, 21 N. W. 514; *Chase v. Hinkley,* 126 Wis. 75, 105 N. W. 230.

That the foregoing is the settled law of this state is appreciated by counsel for claimant, who contends that this case is governed by the principle announced in *Zwolanek v. Baker Mfg. Co.* 150 Wis. 517, 137 N. W. 769, where it was held that the additional compensation there sought to be recovered by an employee was in the nature of a reward. In that case the company had adopted a by-law providing for additional compensation in the nature of a bonus to employees who had remained with it for a period of two years. The court there held that the right of the employee to recover the extra compensation depended upon principles applicable to rewards, and that in such cases performance constituted an acceptance of the offer resulting in a binding contract. This case is reported in 44 L. R. A. N. s. 1214, where there is a note appended. It is said in the note that the decision is supported by *Haag v. Rogers,* 9 Ga. App. 650, 72 S. E. 46; *Youngberg v. Lamberton,* 91 Minn. 100, 97 N. W. 571; and *Kinder v. Cushman,* 89 Neb. 619, 131

N. W. 921. However, an examination of these cases fails to disclose any support in their facts, reason, or argument for the conclusion reached in the *Zwolanek Case*. In each of the cases referred to there was a written contract of employment between the master and employee providing in effect for extra compensation if the employee continued in service for a specified length of time. In each case the employee was discharged and brought action to recover a proportionate share of the extra compensation promised. In each case the employee was permitted to recover under and pursuant to the contract of employment as construed by the court. In none of these cases was the question whether the contract violated the statute of frauds involved, because in each case the contract was written. It is significant, however, that the employees were permitted to recover under the written contract and that their right to recover was based on no other ground. Those three cases as well as the instant case differ from the *Zwolanek Case* in this: in the *Zwolanek Case* that which was construed as a reward constituted no part of the contract of employment. It was a voluntary gratuity provided by the Baker Manufacturing Company through the medium of one of its by-laws and related to every employee in the factory. In the three cases referred to, as well as in the instant case, the extra compensation is referable solely to an agreement constituting an integral part of the contract of employment. The contract or agreement to pay the extra compensation is not independent and severable from the contract of employment as was the situation in the *Zwolanek Case*.

Here the claimant expressed dissatisfaction with his compensation and indicated his disposition to quit unless different arrangements were made. Pursuant to this disposition communicated to his employer, a new contract was entered into in July, 1920. The extra compensation which claimant seeks to recover is not in the nature of a reward or bonus,

but is an integral part of the contract of employment then made, and because that contract was not in writing, and by its terms was not to be performed by either party for a period of five years, it plainly falls within the condemnation of the statute of frauds above referred to. A comparison of *Whitney v. Whitney Bros. Co.* 152 Wis. 453, 140 N. W. 35, with *Hildebrand v. American Fine Art Co.* 109 Wis. 171, 85 N. W. 268, also illustrates the difference between this case and the *Zwolanek Case.*

We may say, too, that if a case like this is to be taken out of the statute of frauds because fully performed by one party, then the statute of frauds might as well drop out of the jurisprudence of this state. That statute was enacted to prevent frauds and perjuries and to require more reliable evidence of the existence and the terms of a contract than that which rests in the faulty memory of those who are called upon to testify with reference thereto after a long lapse of time. The circumstance that the claimant remained in the employ of the deceased or his estate for five years lends no corroboration whatever to the claim that the contract was made in accordance with claimant's contentions. There was no writing. He was paid regular wages, representing the usual wages for that class of service in that community. He never intimated to any one that he was to secure any other wages at any later date. He made no mention of that fact to the administratrix of the estate when she continued him in the employ of the estate and raised his wages to sixty cents an hour. The deceased cannot testify. Claimant's proof to establish the contract rests entirely upon the memory of his nephew, who testifies that he was present and heard the conversation at the time the arrangement was made. The result in this case affords no challenge to the wisdom of the statute of frauds.

*By the Court.*—Judgment reversed, and cause remanded with instructions to disallow the claim.